Alena BARNETT, Appellant,

v.

Timothy BARNETT, Appellee.

No. S–13177.

Supreme Court of Alaska.

Aug. 27, 2010.

---

**28.**   Alaska Const., art. I, § 9.

Thomas R. Wickwire, Law Office of Thomas Wickwire, Fairbanks, for Appellant.

Daniel L. Callahan, Callahan Law Office, Fairbanks, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

CHRISTEN, Justice.

## I. INTRODUCTION

Alena and Timothy Barnett met on the internet in the fall of 2004. In September 2005 Alena relocated to Fairbanks from her home in Belarus with her 18–year–old daughter. Alena and Timothy were married the next month. Timothy filed for divorce in January 2007. In April 2008 the superior court issued findings of fact and conclusions of law dividing the marital property and establishing spousal support. Alena appeals. She challenges the spousal support award on both federal and state law grounds, alleges procedural error by the superior court, and appeals the award of attorney's fees. We affirm the trial court's conclusions that Alena is not entitled to spousal support or attorney's fees under federal law, and we find no procedural error by the trial court. But because the award of spousal support made under state law was premised on an erroneous characterization of courtship costs as marital debt and on findings insufficient to allow us to review whether the award meets Alena's needs, we reverse the award and remand for reconsideration. We also vacate the award of attorney's fees made pursuant to state law.

## II. FACTS AND PROCEEDINGS

Timothy and Alena began a long-distance relationship in the fall of 2004 after meeting on the internet. Alena was living and working in Zhlobin, Belarus; she has a bachelor's degree in railroad transportation engineering, and she was employed by a steelwork company. Timothy was living in Fairbanks; he is the Vice–Chancellor for Academic Affairs at the University of Alaska, Fairbanks (UAF).

Between January and September 2005 Timothy visited Alena in Belarus several times. In March of 2005 he began immigration paperwork for Alena to relocate to Fairbanks, and in May or June of that year Timothy gave Alena $2,500 to complete the purchase of her apartment in Belarus. In September 2005 Alena and her daughter Dasha moved from Belarus to Timothy's home in Fairbanks, where they lived with Timothy and his two teenaged sons. Alena brought $1,000 with her when she moved, and she maintained title to her apartment in Belarus. Timothy paid all of the costs associated with the move. Alena and Timothy married on October 8, 2005. At the time of the marriage, Dasha was 18 years old.

During the marriage, Alena earned between $10.50 and $11.50 per hour working as a salesperson at a hardware store and Timothy continued working at UAF. His income in 2004 was $109,395. Timothy and Alena completed renovations to Timothy's pre-marital home, sharing the work and the expense of the project. Timothy retained sole title to the home but took out a home equity loan to pay down credit card debt, including the costs incurred by Alena and Dasha in their move from Belarus. In Fairbanks, Timothy and Alena purchased a Toyota RAV4 for Alena to drive, and Alena and Dasha used Timothy's tuition reimbursement benefit to take English classes at UAF.

The Barnetts filed immigration paperwork requesting permanent resident status for Alena and Dasha in March 2006. Timothy served as sponsor for Alena and Dasha, and in that capacity he signed an INS Form I–864 affidavit pledging to support them at 125% of the federal poverty level.

Timothy filed a Complaint for Divorce and Motion for Temporary Orders Regarding Possession of Home and Support on January 10, 2007. Alena agreed with the allegations in the complaint and moved out of the Fair-

banks home in May 2007. The court ordered that Alena and Timothy agree on an interim support amount, which they did. By May 2007 Dasha was living in her own apartment.

Trial was held in July 2007. On August 15, 2007, the superior court issued an oral decision on record dividing the parties' property and establishing spousal support. The court ordered that Alena receive $5,875 from the couple's 2006 tax refund (compared with Timothy's $4,000 share), the RAV4 (with approximately $20,000 in outstanding debt and $4,000 of equity), cross-country skis, a couch, a diamond ring, and a sewing machine purchased during the marriage. The court also ordered that Timothy pay Alena $1,500 per month in spousal support "for two years or until she remarries or until she dies or until she is living in the same house with another adult whose income she is relying on." The court awarded Alena $2,000 in attorney's fees.

Timothy's attorney raised an oral objection to the court's spousal support award, observing that it seemed to have been based on 125% of the poverty level for a family of five (the size of the entire blended Barnett family pre-divorce), rather than a family of one (the size of Alena's household after the divorce). The trial court judge stated that he would reexamine that portion of the decision and possibly reduce the award.

In March 2008 Timothy filed proposed findings of fact and conclusions of law, mostly memorializing the court's oral decisions regarding property division and attorney's fees. The proposed findings granted Alena one-half of the marital portion of Timothy's retirement accounts, car payments on the RAV4 ($482.46 per month) through July 2008, and spousal support of $875 per month through the end of May 2008.[1] On April 23, 2008, the superior court adopted the proposed findings and conclusions without alteration.

Alena's Motion to Reconsider and Vacate the April 23 findings of fact and conclusions of law was denied, and she appeals. Alena challenges the superior court's award of spousal support, some of its findings of fact, its adoption of unsolicited findings and conclusions proposed by Timothy's attorney, and its award of attorney's fees.

## III. STANDARD OF REVIEW

▮ The trial court's interpretation of a statute is a question of law to which we apply our independent judgment, "interpreting the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[2]

▮ "Trial courts have broad discretion in fashioning property divisions."[3] Trial courts' allocations of property and awards of spousal support are reviewed for abuse of discretion; we reverse such awards only if they are clearly unjust.[4]

▮ We review a trial court's findings of fact for clear error, which is found "only 'when we are left with a definite and firm conviction based on the entire record that a mistake has been made.' "[5]

▮ We review awards of attorney's fees for abuse of discretion.[6]

## IV. DISCUSSION

### A. The Trial Court Correctly Concluded That Timothy Did Not Owe Spousal Support Under Federal Law.

Alena argues that the superior court erred by failing to follow the terms of 8 U.S.C.

**1.** The parties had agreed to $875 per month in spousal support during the interim period.

**2.** *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008) (citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

**3.** *Edelman v. Edelman*, 3 P.3d 348, 351 (Alaska 2000) (citing *Bellanich v. Bellanich*, 936 P.2d 141, 143 (Alaska 1997)).

**4.** *Id.; see also Beal v. Beal*, 88 P.3d 104, 110 (Alaska 2004).

**5.** *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008) (quoting *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 382 (Alaska 2004)).

**6.** *Beal v. McGuire*, 216 P.3d 1154, 1162 (Alaska 2009).

§ 1183a and the INS Form I–864 affidavit Timothy signed. 8 U.S.C. § 1183a requires that a non-citizen's sponsor contractually commit to support the non-citizen at 125% of the federal poverty level.[7] The sponsor's support obligation lasts until the non-citizen works 40 qualifying quarters under the Social Security Act or departs from the U.S., or until either the non-citizen or the sponsor dies.[8] The support obligation is enforceable in state or federal court against the sponsor by the non-citizen or the federal or state government. At the time of sponsorship, the required support level is 125% of the federal poverty level for "a family unit of a size equal to the number of members of the sponsor's household (including family and non-family dependents) plus the total number of other dependents and aliens sponsored by that sponsor."[9] The Form I–864 affidavit instructions stipulate that "[d]ivorce does not end the sponsorship obligation."[10]

Alena argues that the superior court violated 8 U.S.C. § 1183a by not awarding spousal support for 40 quarters. She also questions the support award because it does not specify how and when to adjust the support payments within the 40 quarters if her circumstances change, whether 125% of the federal poverty line is a gross or net measure, whether she is charged with

an affirmative duty to mitigate the need for support, and whether the size of her household should include Dasha. We conclude that the superior court did not err in its interpretation of 8 U.S.C. § 1183a and that the other questions raised by Alena are waived because they were inadequately briefed.[11]

Based upon Alena's work history in Fairbanks, the superior court found that her earning capacity was "approximately $28,000 per year." The court also found that she would have the capacity to earn "approximately $18,000 per year" even if she scaled back to working 30 hours per week to continue university classes in English and engineering. The court concluded that because both of these amounts are greater than 125% of the federal poverty line for a one-person household in Alaska, neither 8 U.S.C. § 1183a nor the INS Form I–864 affidavit required that Timothy pay spousal support to Alena.[12] We agree. Existing case law supports the conclusion that a sponsor is required to pay only the difference between the sponsored non-citizen's income and the 125% of poverty threshold.[13] And the parties have referred us to no authority supporting the proposition that federal law requires a sponsor to pay spousal support when the sponsored non-citizen's earned income exceeds

**7.** 8 U.S.C. § 1183a(a)(1)(A) (1996).

**8.** 8 U.S.C. § 1183a(a)(3) (1996); INS Form I–864 instructions, page 3.

**9.** 8 U.S.C. § 1183a(f)(6)(A)(iii) (1996).

**10.** INS Form I–864 instructions, page 3.

**11.** Alena's briefing only raises these questions as potential problems with the spousal support order; it does not argue that the superior court erred by incorrectly addressing any of these issues. We do not reach these issues because arguments are waived if they are inadequately briefed on appeal. *Petersen v. Mutual Life Ins. Co. of New York,* 803 P.2d 406, 410 (Alaska 1990).

**12.** At trial, Alena argued that the spousal support calculation should have been based on a household with five members, the size of the Barnett's entire household at the time Timothy signed the Form I–864 affidavit. The superior court concluded that the calculation should be based on a household with one person, relying on *Stump v.*

*Stump,* No. 1:04–CV–253–TS, 2005 WL 2757329, at *5 (N.D.Ind. Oct.25, 2005) (where parties had no minor children, federal obligation to pay spousal support after alien and sponsor divorce is not less than 125% of poverty line for one person).

**13.** *Younis v. Farooqi,* 597 F.Supp.2d 552, 556 (D.Md.2009) ("To determine the appropriate [support due from the sponsor], courts compare the [sponsored immigrant's] annual income for the particular years at issue … against the 125% poverty threshold for each particular year."); *Shumye v. Felleke,* 555 F.Supp.2d 1020 (N.D.Cal. 2008) (calculating a sponsor's annual support obligation by comparing the sponsored immigrant's income against the 125% poverty threshold); *Naik v. Naik,* 399 N.J.Super. 390, 944 A.2d 713, 717 (2008) ("[T]he sponsor is not necessarily required to pay the sponsored immigrant 125 percent of the Federal Poverty Guidelines for the appropriate family unit size. Rather, considering the sponsored immigrant's own income, assets and other sources of support, the sponsor must pay any deficiency in order to meet this minimum level or floor.").

125% of the federal poverty threshold for a household the size of the sponsored non-citizen's household. We conclude that federal law does not require Timothy to pay a spousal support award to Alena at this time. If Alena's earned income falls below 125% of the federal poverty threshold for a family of one before the occurrence of a terminating event (completion of 40 quarters of work, Alena's departure from the United States, or the death of Alena or Timothy), she may bring suit in state or federal court to enforce Timothy's obligation.[14]

### B. Spousal Support Was Incorrectly Calculated Under State Law.

Alena argues that the superior court abused its discretion under Alaska law because its award of spousal support: (1) was premised upon a property award which erroneously included Timothy's courtship costs as a marital debt; (2) was not based upon sufficiently specific findings; and (3) did not properly consider her rehabilitative needs. She also argues that the court's findings regarding her comparative welfare before and after marriage to Timothy and the possibility of her return to Belarus are erroneous. We agree that the spousal support award was premised upon a flawed property award and that additional findings are necessary to allow review of the court's award of spousal support.

### 1. Courtship costs incurred before marriage are presumptively separate debt.

We have repeatedly held that whenever possible a trial court should provide for the needs of a divorced spouse through a disproportionate division of marital assets; awards of spousal support are disfavored and only appropriate when the marital estate is insufficient to meet the needs of a disadvantaged party.[15] This precedent requires that we examine Alena's challenge to the court's property division before reviewing her arguments challenging the adequacy of the court's award of spousal support. The amount of spousal support to which Alena is entitled, if any, is dependent upon the value of the marital property awarded to her and whether her needs can be met with an unequal division of the marital estate.[16]

A trial court's equitable division of a marital estate is a three-step process. "First, the trial court must determine what specific property is available for distribution. Second, the court must find the value of this property. Third, it must decide how an allocation can be made most equitably."[17] Here, the trial court acknowledged Timothy's payment of travel and legal expenses during the courtship and the pre-marital immigration process as one of the factors it relied upon in making its division of marital property. Alena argues that the trial court erred by in-

---

**14.** 8 U.S.C. § 1183a(a)(1)(B) specifies that the terms of the I–864 affidavit are enforceable by "the sponsored alien, the Federal Government, any State (or any political subdivision of such State), or by any other entity that provides any means-tested public benefit" at any time during the period of obligation specified by the affidavit. *See also Cheshire v. Cheshire*, No. 3:05–cv–00453–TJC–MCR, 2006 WL 1208010, at *3–5 (M.D.Fla. May 4, 2006) (form I–864 creates a binding contract between sponsored immigrant and sponsoring spouse, enforceable by sponsored immigrant, which is unaffected by divorce); *Schwartz v. Schwartz*, No. CIV–04–770–M, 2005 WL 1242171, at *2 (W.D.Okla. May 10, 2005) (sponsored immigrant may maintain support action against ex-husband at any point during the period specified by the I–864 affidavit; divorce does not destroy this obligation); *Moody v. Sorokina*, 40 A.D.3d 14, 830 N.Y.S.2d 399, 402 (2007) (sponsored immigrant had a private cause of action against her ex-husband for fulfillment of support obligation under I–864 affidavit).

**15.** *See, e.g., Dixon v. Dixon*, 747 P.2d 1169, 1173 (Alaska 1987) ("We have announced a policy of encouraging trial courts to provide for parties' financial needs by property disposition, rather than by alimony." (citing *Hunt v. Hunt*, 698 P.2d 1168, 1172 (Alaska 1985))); *Schanck v. Schanck*, 717 P.2d 1, 5 (Alaska 1986) (confirming that "our decisions have established a preference for meeting the parties' needs with the division of property, rather than with alimony, where the marital assets are adequate to do so." (citing *Bussell v. Bussell*, 623 P.2d 1221, 1224 (Alaska 1981))).

**16.** *See Messina v. Messina*, 583 P.2d 804, 805 (Alaska 1978).

**17.** *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983).

cluding the debt Timothy incurred during the parties' courtship (on his travel to Belarus, Alena and Dasha's relocation, and the legal aspects of sponsorship and immigration) as marital debt. We agree.[18]

Under AS 25.24.160, courts are generally called upon to divide property "acquired only during marriage." [19]   Courts may look to property acquired before the marriage when the balancing of the equities between the parties requires it, but such property should not be treated as part of the marital estate and available for division unless "the court specifically finds that balancing of the equities requires invasion of the premarital holding." [20]   Here, the trial court did not invade a marital asset, but it did treat a debt that was incurred prior to the marriage as a part of the marital estate. We have never held that courtship expenses are properly considered marital debt, and the trial court made no findings explaining why it treated the courtship expenses as marital debt. We conclude it was error to include courtship expenses in the marital estate absent specific findings explaining why the balancing of the equities required such inclusion.

The trial court was aware of the "great disparity in the parties' incomes," and found that "[f]or that reason the greater percentage of the marital assets should be distributed to Alena." The superior court also entered a support award in her favor. But because the superior court's assessment of the total marital estate available for distribution was skewed by consideration of the courtship costs, its calculation of spousal support was based on a faulty premise. On remand, the superior court should reassess the size of the net marital estate and consider whether a disproportionate award of property can satisfy Alena's needs for spousal support. If the court determines that spous-

al support is warranted, it should enter findings regarding the appropriate amount and duration of Timothy's support obligation.

## 2.  The spousal support award was based on insufficient factual findings.

Alena argues that the superior court's award of spousal support was not supported by adequate findings of fact. In Alaska, spousal support is governed by AS 25.24.160. This statute provides that a court may award spousal support "for a limited or indefinite period of time, in gross or in installments, as may be just and necessary without regard to which of the parties is in fault"; such an award "must fairly allocate the economic effect of divorce." [21]   Before calculating spousal support, a court must consider:

(A) the length of the marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the division of property under (4) of this subsection; and

(G) other factors the court determines to be relevant in each individual case; [22]

We have held that a trial court's award of spousal support "must 'be accompanied by adequate findings, particularly with respect to the financial needs and abilities of both

---

**18.**  Alena also argues that the trial court's property division was error under federal law.   She argues that inclusion of courtship expenses violates Timothy's support obligations under 8 U.S.C. § 1183a and the INS Form I–864 affidavit.   We see no merit in this claim:  neither § 1183a nor the INS affidavit say anything about the division of debt or property upon the divorce of a sponsor and sponsored alien.   Nor do these documents require a sponsor to pay for the cost of a sponsored alien's relocation to this country.

**19.**  AS 25.24.160(a)(4).

**20.**  *Id.*

**21.**  AS 25.24.160(a)(2).

**22.**  *Id.*

parties.' " [23] "Although a trial court need not make findings regarding every factor, we have remanded awards of alimony when there is an insufficient analysis of the needs of the alimony recipient or the means of the paying party." [24]

■ Support awards are generally of two types: reorientation and rehabilitative. "The purpose of reorientation alimony is to allow the requesting spouse an opportunity to adjust to the changed financial circumstances accompanying a divorce." [25] Rehabilitative alimony is awarded when "the recipient spouse intends to apply the alimony toward job training designed to lead to employment," in order "to allow a recipient spouse who exits a marriage with few job skills and little earning capacity to secure a means of earned income." [26] Rehabilitative alimony is "narrowly restricted to job training or other means directly related to entry or advancement within the work force, and the party seeking rehabilitative alimony must intend to use it for such purposes." [27]

■ At the conclusion of trial on July 27, 2007, the superior court issued preliminary oral findings and rulings recognizing the need for Alena to complete further studies in English and engineering in order to pursue employment as an engineer in the U.S., and implying an intent to award rehabilitative support.[28] A few weeks after trial, on August 15, 2007, the court made oral findings explaining its award of $1,500 per month in spousal support and how it determined the duration of Timothy's obligation to pay it.

The trial court's award was made pursuant to 8 U.S.C. § 1183a and the INS Form I–864 affidavit. The court estimated that it would be "about two years" before Alena would be eligible for citizenship and calculated that $1,500 per month in spousal support was necessary to fulfill Timothy's obligation to support her at 125% of the federal poverty level. But the court rescinded this award when Timothy's counsel pointed out that it was based on a calculation for a household of five people, not one. The parties left the August 15, 2007 hearing anticipating a set of corrected findings; the corrected findings were not entered until late April 2008, and they did not rely on federal law. Instead, the corrected findings referenced factors from AS 25.24.160(a)(2), including the length of the parties' marriage, the lack of minor children, and the parties' relative financial positions. The court did not make findings about Alena's specific financial resources and needs, about what expenses Alena would incur if she attended university classes, or about how long she would have to attend classes to achieve her educational goals. As noted, trial ended in July of 2007 but the court did not enter findings until April of 2008. The court's written findings indicate its intention that Alena receive assistance through the end of the 2008 academic year,[29] but the record does not reveal whether Alena was enrolled in classes during the interval between July 2007 and April 2008. From this record we cannot determine the scope of Alena's rehabilitation plan, her needs during the rehabilitation period, or whether she pro-

---

**23.** *Tollefsen v. Tollefsen*, 981 P.2d 568, 572 (Alaska 1999) (quoting *Davila v. Davila*, 876 P.2d 1089, 1094 (Alaska 1994)).

**24.** *Gallant v. Gallant*, 882 P.2d 1252, 1255 (Alaska 1994).

**25.** *Tollefsen*, 981 P.2d at 572 (quoting *Richmond v. Richmond*, 779 P.2d 1211, 1215 n. 6 (Alaska 1989)).

**26.** *Fernau v. Rowdon*, 42 P.3d 1047, 1058 (Alaska 2002) (internal citations and quotations omitted).

**27.** *Id.* (citing *Edelman v. Edelman*, 3 P.3d 348, 358 (Alaska 2000)).

**28.** The court noted Alena's desire to go to school and discussed the need for financial support from Timothy to "supplement her loss of 10

hours a week at Lowe's and so she can go to school." The court went on to acknowledge that Alena would require approximately two years of courses in English and engineering in order to be able to work as an engineer in the U.S., and, in response to questioning from Timothy's attorney, stated that it was "probably a good thing to believe" that the court's support order would be "rehabilitative spousal support" tied to Alena attending school.

**29.** The court ordered that Timothy pay spousal support of $875 per month through May 31, 2008, "the end of the 2007–08 school year." Because these findings were not executed until late April 2008, the court's order only required one more month of spousal support.

gressed toward or completed her educational goals in the interval before the corrected findings were entered in April 2008. Because the court did not make findings concerning Alena's needs or indicate how its award of spousal support would meet those needs, we are unable to review the adequacy of the spousal support award under state law. We therefore remand this issue to the trial court for reconsideration and additional findings.

### 3. The court's factual findings regarding Alena's ability to support herself in Belarus and her relative position after this marriage were supported by the record.

■ Alena argues that the superior court's findings concerning her ability to support herself in the event she returns to Belarus and her relative financial position before and after this marriage are clearly erroneous. She also argues that the court's written findings are contrary to its August 15, 2007 oral findings, and contrary to "undisputed evidence" concerning the state of the economy in Belarus.[30] We disagree.

Alena testified that she still owns her apartment in Belarus and that the average pay in her former profession was $100 per month. The court orally found that although Alena "has given up everything she has to come to this country," she could "pick up and leave and go back to Belarus if she wants." The court recognized that "it might be emotionally difficult for her to return to ... Belarus" and it heard testimony that Alena's relatives now live in her apartment, but the court found, "she has th[e] option [of returning to Belarus] and she can do what she wants to." The court made no other factual findings on this point. Alena offered only her own arguments as proof of the economic situation in Belarus and conceded at trial that, although "difficult," she might be able to get a job paying the average salary of $100 per month if she returned there. This, coupled with the evidence that she now owns her apartment free of any mortgage debt, supports the trial court's conclusion that its award was sufficient to support Alena for a period of months in Belarus; it was not clear error. Alena does not provide a convincing argument that the trial court's April 2008 written findings conflict with its August 2007 oral findings.

### 4. Alena waived her arguments regarding the trial court's procedural decisions.

■ Alena also argues that the trial court made procedural errors by issuing the written findings, including accepting unsolicited findings drafted by counsel, entering written findings which conflicted with the court's oral findings, and delaying too long before issuing the findings. Timothy counters that the written findings, which were drafted by his attorney, were submitted in accordance with Alaska Rule of Civil Procedure 78(a)[31] and were adopted by the court in keeping with this court's existing case law on point.[32] Alena only raises these argu-

---

**30.** The findings Alena specifically objects to are ¶ 8 ("[Alena] has the opportunity to choose whether to return to Belarus or to stay in this country. With the funds she is receiving in this divorce, she could afford to support herself in Belarus until she found new employment") and ¶ 14(f) ("With this property division and spousal support award, Alena is substantially better off financially than she was before she came to the United States."). The superior court relied in part on these findings for its conclusion that the division of marital assets was "fair and equitable and fairly allocates the financial impact of the divorce between the parties."

**31.** Rule 78(a) allows counsel for "the successful party to an action" to "prepare in writing and file and serve on each of the other parties proposed findings of fact, conclusions of law, judg-

ments, and orders." Timothy and Alena had been awaiting findings from the court since August 2007; in February 2008, Timothy filed a Request for Hearing to resolve the outstanding issues in the case and, on March 6, 2008, he filed draft Findings of Fact and Conclusions of Law. These findings were adopted by the court on April 23, 2008. According to the certificate of service accompanying the draft findings, they were served on Alena's attorney more than a month and a half before the court signed and entered them, allowing ample time for Alena to object.

**32.** *See Harris v. AHTNA, Inc.*, 193 P.3d 300, 306 (Alaska 2008) (quoting *Indus. Indemnity Co. v. Wick*, 680 P.2d 1100, 1108 (Alaska 1984)); *Miller v. Miller*, 105 P.3d 1136, 1140 (Alaska 2005).

ments in her reply brief. Because we deem waived any arguments raised for the first time in a reply brief, we do not here reach the merits of these issues.[33]

### C. Alena Is Not Entitled To Additional Attorney's Fees Under Federal Law.

■ Alena argues that the superior court erred by failing to award her full attorney's fees for the time her attorney spent on efforts to enforce Timothy's federal support obligations. Alena filed a record of her attorney's fees, as requested at trial on July 12, 2007. She included a breakdown of the hours her attorney worked overall, and specified the number of hours spent on efforts to enforce the sponsor's duty to support her under 8 U.S.C. § 1183a and the INS Form I–864 affidavit.

8 U.S.C. § 1183a(c) does provide that "[r]emedies available to enforce an affidavit of support under this section include ... payment of legal fees and other costs of collection." The parties cite no precedent from any jurisdiction providing for an award of attorney's fees to a party who was not deemed entitled to spousal support under this federal statute. Instructions for the INS Form I–864 affidavit comport with this conclusion. In relevant part, the instructions state:

> If you [the sponsor] are sued [for support owed under INS Form I–864], *and the court enters a judgment against you,* the person or agency that sued you may use any legally permitted procedures for enforcing or collecting the judgment. You may also be required to pay the costs of collection, including attorney fees.[34]

In the absence of a judgment against Timothy under 8 U.S.C. § 1183a to enforce an affidavit of support, the superior court correctly ruled that Alena is not entitled to an award of attorney's fees under federal law.

Because the relative position of the parties may change on remand, we vacate the fee award made pursuant to state law. The superior court should reassess the fee award after it addresses the other issues remanded by this decision.

### V. CONCLUSION

For the reasons stated above, we AFFIRM the superior court's conclusions that Alena is not entitled to spousal support or attorney's fees under federal law. We REVERSE the characterization of courtship costs as marital debt and REVERSE the award of spousal support under state law. We VACATE the award of attorney's fees under state law and remand for further proceedings in keeping with this decision.

**33.** *Conam Alaska v. Bell Lavalin, Inc.,* 842 P.2d 148, 158 (Alaska 1992). In his briefing, Timothy responded to these issues with particularity only, it seems, because Alena did argue them in her Motion to Reconsider and Vacate. But the fact that she mentioned these arguments more specifically below does not change the fact that she failed to include them in her opening brief on appeal.

**34.** INS Form I–864 Instructions, page 7 (emphasis added).