**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 28, 2022**

# In the Court of Appeals of Georgia

A22A0428. BACKMAN v. BACKMAN.

HODGES, Judge.

In this divorce action, we are asked to decide whether the sponsor of an immigrant, pursuant to an I-864 Affidavit of Support,[1] must provide financial support to the sponsored immigrant upon the parties' divorce when the parties previously executed a prenuptial agreement that waives spousal support. In its order granting a husband's petition for divorce, the Superior Court of Fulton County found that the husband's I-864 affidavit, executed to provide support to his Colombian wife, was enforceable and ordered the husband to pay the wife $1,000 in support per month as a result. We granted the husband's application for discretionary appeal to consider his argument that the trial court erred in awarding support to the wife because: (1) the

---

[1] See 8 USC § 1183a at seq.; 8 CFR § 213a.

parties waived spousal support in their prenuptial agreement; and (2) the wife's income exceeded the limit for which additional support was required. These arguments raise issues of first impression in Georgia and, for the following reasons, we conclude that the trial court correctly found that the husband's I-864 Affidavit of Support was enforceable despite the parties' prenuptial agreement and divorce. However, the trial court imposed a support award that was not authorized by federal law due to the amount of the wife's income. Therefore, we affirm in part and reverse in part.

The underlying facts are generally undisputed. John Backman ("Husband") and Catherine Backman a/k/a Catherine Otalvaro Cespedes ("Wife") met through an online dating site in 2011. Thereafter, Husband visited Wife, who was a citizen of and resided in Colombia, on multiple occasions before proposing marriage.[2] The couple wed in February 2013, but Wife did not have a visa to enter the United State and was

---

[2] In December 2012, the parties executed a prenuptial agreement which provided, in relevant part, that "[e]ach party releases any right to claim temporary alimony, permanent alimony, rehabilitative alimony, periodic alimony, lump sum alimony, special equities, equitable distributions, remuneration, support, and attorney's fees or costs" except as related to child support obligations. During the divorce proceedings, Husband moved to enforce the agreement; Wife filed responses in opposition to Husband's motion, to which Husband replied. The trial court ultimately granted Husband's motion.

unable to immediately join Husband. To expedite Wife's arrival in the United States, Husband executed an I-864 Affidavit of Support pursuant to the Immigration and Nationality Act, in which he pledged to financially support Wife. See 8 USC § 1183a et seq.; 8 CFR § 213a. Wife then moved to the United States and is now a legal permanent resident.

However, the couple's relationship soured, and in July 2018, two months after the birth of their second child, Husband filed a complaint for divorce. Following a bench trial, the trial court granted Husband's petition for divorce and awarded physical custody of the couple's two children to Husband. In its final order, the trial court found that

> Husband has an obligation to support Wife pursuant to the I-864 Affidavit of Support under Section 213A of the [Immigration and Nationality Act]. As such, the Court will use [its] discretion and award the Wife the amount of $1,000.00 per month, to be paid directly to the Wife, until such time that the I-8[6]4 Affidavit of Support is no longer enforceable on January 1, 2023.[3]

---

[3] The trial court's order did not contain any citation of authority or discussion supporting its conclusion. During the bench trial, however, the trial court indicated it had reviewed the parties' briefing "regarding the prenuptial agreement and issues regarding [Husband's] affidavit that he presented to the government when he requested that [Wife] come here." The court stated that it "took that to mean that [Husband] had an obligation to provide a certain level of financial support" and that

Husband filed an application for discretionary appeal to challenge the trial court's award of support pursuant to the I-864 affidavit. We granted Husband's application, and this appeal follows.[4]

In a single enumeration of error, Husband argues that the trial court erred in enforcing a support payment in excess of the maximum required by the I-864 Affidavit of Support. Specifically, Husband argues that the I-864 affidavit only requires a spouse to "maintain the immigrant spouse at 125% of the federal poverty guidelines"[5] and that Wife's income exceeded that limit such that no additional support was available. In part, we agree.

---

it "will establish the dollar amount that it believes should be provided for [Wife's] minimal support . . . [u]nless you can provide me some guidance, through case law, that says this is the minimum amount that sponsors are to provide, and I do not have the discretion to do otherwise."

[4] Wife's motion to dismiss Husband's appeal is denied.

[5] Husband does not contend that the I-864 Affidavit of Support is unenforceable as a result of the parties' divorce. See generally *Motlagh v. Motlagh*, 100 NE3d 937, 942 (II) (Ohio App. 2017) ("Divorce is not a condition under which the sponsor's obligations under Form I-864 can be terminated."). Indeed, Husband's counsel stated that she had "no problem with the Court including a provision in its order that [Husband] will comply with his obligations under I-864." Rather, he contends that Wife excused his obligation in view of her waiver of spousal support in the prenuptial agreement and because Wife's income exceeds the amount for which support would be required.

4

As this appears to be an issue of first impression under Georgia law, we start with a review of the controlling federal statutes that authorize the I-864 Affidavit of Support. See 8 USC § 1182 et seq. To begin, "the Immigration and Nationality Act forbids admission to the United States of any alien who 'is likely at any time to become a public charge.' 8 USC § 1182 (a) (4); 8 CFR § 213a.2 (a)." *Erler v. Erler*, 824 F3d 1173, 1175 (I) (9th Cir. 2016). As a result,

> [f]amily-sponsored immigrants seeking admission are admissible only if the person petitioning for the immigrants' admission signs an Affidavit of Support Form I-864. A Form I-864 is a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant. The signing sponsor submits himself to the personal jurisdiction of any court of the United States or of any State, territory, or possession of the United States if the court has subject matter jurisdiction of a civil lawsuit to enforce the Form I-864. See 8 USC § 1182 (a).

(Citations omitted.) *Motlagh v. Motlagh*, 100 NE3d 937, 941 (II) (Ohio App. 2017); see also *Erler*, 824 F3d at 1175 (I). "By signing a Form I-864 the 'sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable.' 8 USC § 1183a (a) (1) (A)." *Motlagh*, 100 NE3d at 941 (II). Stated

5

succinctly, then, "when a sponsored immigrant separates from the sponsor's household, the sponsor's obligation under the affidavit of support is to provide the immigrant with whatever support is necessary to maintain him or her at an annual income of at least 125% of the poverty guidelines for a one-person household." *Erler*, 824 F3d at 1179-1180 (III); see also *Younis v. Farooqi*, 597 FSupp2d 552, 557 (C) (D. Md. 2009) (same).

(a) *Availability of I-864 Support Generally*. In this case, Husband argues that the application of "an I-864 obligation where the immigrant spouse waived the right to seek spousal support under state law" is not permitted. This argument is unfounded.

In *Erler*, the Ninth Circuit considered an appeal in which a husband and wife executed a "premarital agreement stating that neither party would be entitled to alimony or support from the other." 824 F3d at 1175 (I). Shortly after the parties married, the husband executed an I-864 affidavit to support the wife, a Turkish national. Following their divorce, the wife, who had moved in with her adult son, filed an action in federal district court to enforce the husband's I-864 obligation to provide support. The husband argued that "the parties' premarital agreement and the

[state] divorce judgment terminated his obligation under the affidavit of support." Id. at 1176 (II).

In concluding that the district court correctly rejected the husband's argument, the Ninth Circuit noted that "the right of support conferred by federal law exists apart from whatever rights a sponsored immigrant might or might not have under state divorce law." (Citation and punctuation omitted.) *Erler*, 824 F3d at 1177 (II); see generally *Kawai v. UaCearnaigh*, 249 FSupp3d 821, 824 (V) (D. S. C. 2017). As a result, "under federal law, neither a divorce judgment nor a premarital agreement may terminate an obligation of support."[6] *Erler*, 824 F3d at 1177 (II); see also *Belevich v. Thomas*, 17 F4th 1048, 1052 (II) (11th Cir. 2021). Other courts considering similar claims have reached similar conclusions. See *Liu v. Mund*, 686 F3d 418, 419-420 (7th Cir. 2012); *Golipour v. Moghaddam*, 438 FSupp3d 1290, 1299 (D. Utah 2020); *Shumye v. Felleke*, 555 FSupp2d 1020, 1024 (I) (A) (N. D. Cal. 2008).

---

[6] "Under federal law, an affidavit of support remains enforceable until the sponsored immigrant: (1) becomes a citizen of the United States; (2) has worked or can be credited with 40 qualifying quarters of work under title II of the Social Security Act; (3) ceases to be a lawful permanent resident and departs the United States; (4) obtains in a removal proceeding a grant of adjustment of status as relief from removal; or (5) dies." *Erler*, 824 F3d at 1176 (II), citing 8 USC § 1183a (a) (2) - (3) and 8 CFR § 213a.2 (e) (2) (i). Based upon the record and the parties' arguments, none of these factors appear to be satisfied in this case.

7

We agree with the weight of persuasive authority holding that a premarital agreement under state law does not excuse an I-864 sponsor's obligation under federal law to support the subject immigrant, and the parties have not shown why such authority should not be applied in Georgia. Therefore, we conclude that neither the parties' waiver of spousal support in their prenuptial agreement nor their divorce terminated Husband's I-864 Affidavit of Support.

(b) *Availability of Excess I-864 Support*. Having confirmed that Husband's I-864 obligation survived the parties' prenuptial agreement and divorce, we turn next to whether the trial court correctly awarded Wife $1,000 of support per month pursuant to Husband's affidavit. We conclude that trial court's award was improper.

(i) *Size of Wife's Household*. In *Erler*, the court held that "in the event of a separation, the sponsor's duty of support must be based on a household size that is equivalent to the number of sponsored immigrants living in the household, not on the total number of people living in the household." 824 F3d at 1178 (III). Therefore,

> [i]f the sponsor agreed to support more than one immigrant, and those immigrants separate from the sponsor's household and continue to live together, then the sponsor must provide them with whatever support is necessary to maintain them at an annual income of at least 125% of the poverty guidelines for a household of a size that includes all the sponsored immigrants. When measuring the immigrant's income, the

8

court must disregard the income of anyone in the household who is not a sponsored immigrant.

(Footnote omitted.) 824 F3d at 1180 (III). Applying this principle to the present case, we conclude that the size of Wife's household following the divorce was one, notwithstanding that she resided with her mother. See id.; *Motlagh*, 100 NE3d at 943-944 (III). Husband's contractual obligation arising from the I-864 Affidavit of Support bound him to support Wife only. See *Erler*, 824 F3d at 1178 (III) ("The sponsor would not reasonably expect the obligation of support to be based on a household that includes the sponsored immigrant or immigrants *plus* anyone else with whom the immigrant might choose to live.") (emphasis in original). As a result, there is no support in the record, and nothing in the trial court's order, to suggest that Wife's household size was anything other than one for purposes of Husband's I-864 obligation. See *Erler*, 824 F3d at 1180 (III) (finding no obligation to support former wife's adult son with whom wife lived).

(ii) *Amount of Wife's Income*. Next, we consider the trial court's calculation of Wife's income and whether it exceeded 125 percent of the federal poverty guidelines for a one-person household.

Under federal law, an I-864 sponsor must agree "to provide support to maintain [a] sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable[.]" 8 USC § 1183a (a) (1) (A). "'Federal poverty line' means the level of income equal to the official poverty line (as defined by the Director of the Office of Management and Budget, as revised annually by the Secretary of Health and Human Services, in accordance with [42 USC § 9902] that is applicable to a family of the size involved." 8 USC § 1183a (h).

Accordingly, "[a] minimum standard or floor is set by [8 CFR] § 213A, i.e., 125 percent of the Federal Poverty Line for the appropriate family unit size. 8 USC § 1183a (a) (1) (A)." *Naik v. Naik*, 944 A2d 713, 717 (N. J. Super. Ct. App. Div. 2008). Courts have construed this provision

> to mean that the sponsor is not necessarily required to pay the sponsored immigrant 125 percent of the Federal Poverty Guidelines for the appropriate family unit size. Rather, considering the sponsored immigrant's own income, assets and other sources of support, the sponsor must pay any deficiency in order to meet this minimum level or floor.

Id.; see also *Shumye*, 555 FSupp2d at 1024 (I) (B) (calculating a sponsor's annual support obligation by comparing the sponsored immigrant's income against the 125% poverty threshold); *Barnett v. Barnett*, 238 P3d 594, 598 (IV) (A), n. 13 (Alaska 2010), citing *Younis*, 597 FSupp2d at 554 (A) ("To determine the appropriate support due from the sponsor, courts compare the sponsored immigrant's annual income for the particular years at issue against the 125% poverty threshold for each particular year.") (punctuation omitted).

In this case, the trial court found that Wife's income totaled $2,610 per month.[7] The 2020 Federal Poverty Guidelines, introduced into evidence during the bench trial, listed 125 percent of the monthly federal poverty guideline for a one-person household as $1,329. Accordingly, under prevailing case law, Wife was not entitled to additional support pursuant to Husband's I-864 obligation because "a sponsor is required to pay only the difference between the sponsored non-citizen's income and the 125% of poverty threshold." *Barnett*, 238 P3d at 598 (IV) (A); see also *Naik*, 944 A2d at 717.

Nevertheless, the trial court "use[d] [its] discretion" to award Wife $1,000 per month in purported satisfaction of Husband's I-864 obligation. This was error.

---

[7] The parties have not challenged this figure.

Because the I-864 Affidavit of Support represents a contractual obligation by the sponsor with United States government for the benefit of the sponsored immigrant, the trial court's exercise of discretion in this context was inappropriate. Instead, enforcement of a sponsor's I-864 obligation is based upon a rather simple formulaic calculation to determine "the sponsored immigrant's own income, assets and other sources of support," the sponsored immigrant's household size, and the concomitant 125 percent federal poverty guideline. See *Naik*, 944 A2d at 717. Put simply, if the sponsored immigrant's income is less than the 125 percent federal poverty guideline for his or her household size, "the sponsor must pay any deficiency in order to meet [the] minimum level or floor." Id. It necessarily follows that if the sponsored immigrant's income exceeds the relevant federal poverty guideline, additional support is not warranted.[8] See id.; see also *Barnett*, 238 P3d at 598-599 (IV) (A) (finding "no authority supporting the proposition that federal law requires a sponsor to pay spousal support when the sponsored non-citizen's earned income exceeds 125% of the federal

_____

[8] Indeed, even were the trial court authorized to exercise its discretion, the record does not indicate the manner in which the trial court did so to arrive at the seemingly arbitrary $1,000 figure. See generally *Kim v. Lim*, 254 Ga. App. 627, 633 (4) (563 SE2d 485) (2002) (remanding case to the trial court, in part, because "the trial court denied appellants' motion . . . without any explanation of the manner in which it exercised its discretion").

12

poverty threshold for a household the size of the sponsored non-citizen's household").[9]

In sum, we conclude that, consistent with multiple federal courts as well as courts in other states, a sponsor's obligation to support a sponsored immigrant pursuant to an I-864 Affidavit of Support is not terminated by either a prenuptial agreement or the parties' divorce under Georgia state law. Furthermore, we conclude that the sponsor of a sponsored immigrant is not required to provide I-864 support if the sponsored immigrant's income exceeds the 125 percent federal poverty guideline for his or her household size; however, if the sponsored immigrant's income is less than the relevant federal poverty guideline, the sponsor is required to pay any deficiency in order to satisfy that minimum level of support. Because the trial court recognized initially that Husband's I-864 Affidavit of Support was enforceable despite the parties' prenuptial agreement and subsequent divorce, we affirm that portion of the trial court's ruling. However, we reverse the trial court's award of

---

[9] Wife contends that the trial court retains some level of discretion because the Immigration and Nationality Act contains "no regulations or statutes [that] explain how to calculate the sponsored immigrant's income and household size when the parties have divorced and no longer live together." However, Wife cites no authority in support of this novel argument.

13

$1,000 per month to Wife because it was not authorized by federal law in view of the amount of her monthly income.[10]

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Brown, J., concur.*

---

[10] We note that, consistent with courts in other states, "[i]f [Wife's] earned income falls below 125% of the federal poverty threshold for a family of one before the occurrence of a terminating event . . ., she may bring suit in state or federal court to enforce [Husband's] obligation." *Barnett*, 238 P3d at 599 (IV) (A); see also *Erler*, 824 F3d at 1176 (II), citing 8 USC § 1183a (a) (2) - (3) and 8 CFR § 213a.2 (e) (2) (i) (terminating events).