[Cite as *Motlagh v. Motlagh*, 2017-Ohio-8667.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| SAFA MOTLAGH | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27477 |
| | : | |
| v. | : | Trial Court Case No. 14-LS-15 |
| | : | |
| DJALOLIYA MOTLAGH | : | (Domestic Relations Appeal) |
| | : | |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of November, 2017.

. . . . . . . . . . .

ROBERT L. MUES, Atty. Reg. No. 0017449, THOMAS G. KOPACZ, Atty. Reg. No. 0091202, 1105 Wilmington Avenue, Dayton, Ohio 45420
    Attorneys for Plaintiff-Appellee

DALMA C. GRANDJEAN, Atty. Reg. No. 0024841, 1 South Main Street, Suite 1590, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Djaloliya Motlagh appeals from a judgment and decree of divorce entered by the Montgomery County Court of Common Pleas, Domestic Relations Division. Ms. Motlagh contends that the trial court erred with regard to its disposition of her claim for support under 8 U.S.C. 1181 et. seq. She further contends that the trial court erred by requiring her to post a surety bond as a means to ensure that she does not remove the parties' minor daughter from the country. Finally, she claims that the trial court erred by failing to award her attorney fees.

{¶ 2} We conclude that the trial court did err with regard to the issue of support. We conclude that the trial court did not abuse its discretion by not awarding attorney fees relating to the divorce action, but that the trial court erred by not considering the issue of attorney fees allowed by 8 U.S.C. 1183a(c). We finally conclude that the trial court did not abuse its discretion by ordering Ms. Motlagh to post a surety bond.

{¶ 3} Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.

## I. Facts and Procedural History

{¶ 4} In May 2010, Safa Motlagh, a United States citizen, and Ms. Motlagh, a citizen of Tajikistan, met through an internet dating service. After communicating on-line for a period of several months, Mr. Motlagh traveled to Turkey where he and Ms. Motlagh met for a period of about two weeks. The couple became engaged and Mr. Motlagh returned to the United States where he arranged for Ms. Motlagh to obtain a 90-day fiancée visa. As part of that process, he executed an Affidavit of Support, Form I-864,

as required by the Immigration and Naturalization Act and 8 U.S.C. 1181 et. seq. Ms. Motlagh entered the United States on July 11, 2011. The parties were married in Yellow Springs, Ohio, on July 23, 2011. They have one minor child as a result of their union.

{¶ 5} Mr. Motlagh filed a complaint for legal separation on August 27, 2014. Ms. Motlagh filed an answer and a counterclaim for divorce. Mr. Motlagh filed an amended complaint seeking divorce. Temporary orders awarded custody of the child to Ms. Motlagh. Mr. Motlagh was granted the standard order of parenting time, which was later amended to give him one additional Saturday of visitation per month. Mr. Motlagh was also ordered to pay child support in the sum of $900 per month, and spousal support in the sum of $900 per month.

{¶ 6} A five-day hearing was conducted over the course of several months from October 2015 to August 2016. Of relevance hereto, in the Final Judgment and Decree of Divorce, the trial court ordered that neither party could "travel with or remove the child from the United States of America for any reason." In conjunction with the travel restriction, the court ordered Ms. Motlagh to post a surety bond in the amount of $100,000 which would be forfeited upon violation of the travel restriction. The Decree also stated that the parties are responsible for their respective attorney fees. With regard to support, the decree stated:

> After considering the statutory factors in O.R.C. Section 3105.18(C) and the
>
> applicablility of the Illegal Immigration Reform and Immigrant Responsibility
>
> Act ("IIRIRA"), 8 U.S.C. Section 1181 et seq., and the terms of the affidavit
>
> of support I-864 signed by the Plaintff, the Court orders that Plaintiff shall
>
> pay to Defendant as and for spousal support the sum of $900.00 per month

effective with the filing of the Final Judgment and Decree of Divorce for a period of twenty-four (24) months. Said spousal support shall be taxable to the Defendant and deductible for tax purposes to the Plaintiff. Said spousal support shall be subject to the Court's continuing jurisdiction as to amount, but not duration. Said spousal support shall terminate upon the death of either party or the remarriage of the Defendant. Further, the Court shall retain concurrent jurisdiction with the federal courts in applying the I-864 contract. After the termination of spousal support, either party has the option of filing a motion with the Court to effectuate the terms of the I-864 contract. Still further, the Court finds that monies paid by Plaintiff to Defendant for all years from 2011 through 2016 and those sums received as gifts, exceed the financial requirements under the I-864 contract and, therefore, Plaintiff has no obligation to pay Defendant any monies for those years. The Court also notes that Plaintiff is obligated to ensure that Defendant's income does not fall below 125% OF THE FEDERAL POVERTY LINE. Plaintiff is not required to pay Defendant 125% of the federal poverty line, but only to act as a safety net to ensure that her overall income does not fall below that level. The two year timeframe during which Defendant would receive spousal support would permit her to procure the necessary skills to obtain employment and would allow her time to pursue her citizenship if she so desires.

{¶ 7} Ms. Motlagh appeals.

## II. Affidavit of Support

{¶ 8} Title II, Chapter 2, Act 212 and 213A of the Immigration and Nationality Act of 1952 ("INA") provides that family-sponsored immigrants may not be admitted into the United States unless the person seeking the immigrant's admission executes an Affidavit of Support, or Form I-864. These provisions are codified at 8 U.S.C. 1182 and 1183a. In *Shumye v. Fellecke*, 555 F.Supp.2d 1020 (N.D. Cal. 2008), the Federal District Court for the Northern District of California set forth the following explanation of the purpose and enforcement of the I-864 Affidavit of Support:

Certain classes of immigrants may be deemed inadmissible including but not limited to, those that may be likely to become a public charge. *See* 8 U.S.C. § 1182(a)(4). Family-sponsored immigrants seeking admission are admissible only if the person petitioning for the immigrants' admission signs an Affidavit of Support Form I-864. A Form I-864 is a legally enforceable contract between the sponsor and both the United States Government and the sponsored immigrant. *See Schwartz v. Schwartz*, W.D. Okla. No. CIV-04-770-M, 2005 WL 1242171 (May 10, 2005). The signing sponsor submits himself to the personal jurisdiction of any court of the United States or of any State, territory, or possession of the United States if the court has subject matter jurisdiction of a civil lawsuit to enforce the Form I-864. *See* 8 U.S.C. § 1182(a).

The express terms of the Form I-864 state that by signing the Form I-864, the sponsor is obligated to provide the sponsored immigrant with whatever support is necessary to maintain the sponsored immigrant at an

annual income that is at least 125% of the federal poverty level annual guideline. By signing a Form I-864 the "sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(1)(A). Federal courts have consistently found that a Form I-864 constitutes a legally binding and enforceable contract between sponsor and a sponsored immigrant. *Cheshire v. Cheshire*, M.D.Fla. No. 3:05-cv-00453-TJC-MCR, 2006 WL 1208010 (May 4, 2006). The terms of the Form I-864 provide for the appropriate "measure of damages that would put plaintiff in as good a position as she would have been had the contract been performed." *Stump v. Stump*, N.D.Ind. No. 1:04-CV-253-TS, 2005 WL 1290658 (May 27, 2005). A sponsor may also be held liable for legal fees and other costs of collection. *See* 8 U.S.C. § 1183a(c).

The sponsor's obligation under Form I-864 terminates only if one of five conditions is met: (1) the sponsor dies, (2) the sponsored immigrant dies, (3) the sponsored immigrant becomes a U.S. citizen, (4) the sponsored immigrant permanently departs the U.S., or (5) the sponsored immigrant is credited with 40 qualifying quarters of work. *See* 8 U.S.C. § 1183a(a)(2). Divorce is not a condition under which the sponsor's obligations under Form I-864 can be terminated. *See Schwartz*, 2005 WL 1242171, at *1.

*Id.* at 1024-1025.

{¶ 9} As noted, the sponsored immigrant may bring an action with respect to financial support in any appropriate court. 8 U.S.C. 1183a (e). Courts have typically interpreted the statute as permitting a sponsored immigrant to seek enforcement of the affidavit in divorce actions. *See Davis v. Davis*, 6th Dist. Wood No. WD-04-020, 2004-Ohio-6892; *Davis v. U.S.*, 499 F.3d 590 (6th Cir. 2007); *Greenleaf v. Greenleaf*, Mich. App. No. 299131, 2011 WL 4503303 (Sept. 29, 2011); *Love v. Love*, 33 A.3d 1268 (Pa. Super. 2011).

### III. I-864 Obligation

{¶ 10} Ms. Motlagh's first assignment of error states as follows:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ORDER THAT APPELLEE HAS A LEGAL OBLIGATION TO PROVIDE APPELLANT WITH THE SUPPORT NECESSARY TO MAINTAIN HERSELF AT AN INCOME LEVEL THAT IS AT LEAST 125 PERCENT OF THE FEDERAL POVERTY GUIDELINES PURSUANT TO THE I-864 AFFIDAVIT OF SUPPORT.

{¶ 11} Ms. Motlagh contends that the trial court erred with regard to the issue of Mr. Motlagh's support obligation created by Mr. Motlagh's execution of the I-864 Affidavit of Support. Specifically, she contends that the trial court impermissibly commingled the spousal support order with the support obligation created by the I-864 Affidavit of Support (I-864). She also contends that the trial court erred by failing to grant her request for specific performance of the I-864 obligation for all future dates, and by awarding her support that does not meet 125% of the federal poverty line. She also contends that the

trial court erred by implying that she has a duty to mitigate. Finally, she contends that the trial court erred by stating that it retained concurrent jurisdiction over Mr. Motlagh's I-864 support obligation with the federal courts, and by granting both parties standing to seek adjustment of the support order.

{¶ 12} We first note that the trial court found that the terms of Mr. Motlagh's I-864 support obligation had been met for the years 2011 through 2016.[1] Thus, any issue regarding liability under I-864 applies only to 2017 and beyond. Ms. Motlagh has not appealed this finding.

{¶ 13} We next turn to the claim that the trial court impermissibly commingled the issues of spousal support and the I-864 support obligation. We agree with Ms. Motlagh that spousal support and an I-864 obligation are separate and distinct issues. An award of spousal support under Ohio law is an equitable remedy, while an I-864 obligation involves a federally granted contractual remedy that is independent of spousal support and survives divorce. *See Greenleaf v. Greenleaf*, *supra*; *Love v. Love*, *supra*. However, "[r]emedies available to enforce an affidavit of support include an order for specific performance * * * and include corresponding remedies available under State law." *Davis v. U.S.*, 499 F.3d 590, 595 (6th Cir. 2007), citing 8 U.S.C. 1183a(c). Thus, in the context of a divorce action, a state court has the ability to enforce compliance with an I-864 obligation through specific performance of the contract, by issuing an order for spousal support under state law, or by a combination of both. So, to a certain extent, the issue of spousal support and its interplay with an I-864 obligation may be inevitable when

---

[1] The trial court's finding was based, in part, upon undisputed evidence that Ms. Motlagh received approximately $43,000 from her brother as a gift.

I-864 enforcement is raised in the context of an action for divorce.

{¶ 14} For example, a sponsored immigrant might be employed with income well in excess of 125 percent of the poverty line. In that situation, a divorce court would not err in determining that both spousal support and specific enforcement of the I-864 obligation is inappropriate. However, a state divorce court, under different facts, might decide, following review of the relevant statutory factors, that an award of spousal support is appropriate under Ohio law. However, if that award of spousal support is not sufficient to maintain the sponsored immigrant's income at the minimum level of 125% of the federal poverty line, the sponsor remains liable under the I-864 Affidavit for the amount necessary to reach that level. Alternatively, the trial court might conclude that spousal support is not merited, and simply proceed to enforce the I-864 obligation. However, under all of these scenarios, a trial court must consider each potential remedy. Thus, we conclude that Ms. Motlagh's claim of improper commingling of relief lacks merit. We, however, note, as further discussed herein, that irrespective of how the I-864 support obligation is enforced, the ordered support must be sufficient so that the obligee's income meets 125% of the federal poverty line requirement.

{¶ 15} We next address the claim that the trial court erred by failing to order specific performance of the I-864 obligation. Ms. Motlagh cites *Davis v. Davis*, 6th Dist. Wood No. WD-04-020, 2004-Ohio-6892, for the proposition that the trial court was required to order specific performance on the obligation. We find *Davis* distinguishable. In that case, the trial court expressly refused to enforce the Affidavit of Support finding that it was a matter best left to the federal court system. *Id.* at ¶ 6. The court of appeals reversed finding that the trial court erred when it declined to "take jurisdiction for [the Affidavit's]

enforcement." *Id.* at ¶ 21. In this case, the trial court did not refuse jurisdiction over the I-864 obligation. Further, as noted, a divorce court may enforce the I-864 obligation through a spousal support order, an order of specific performance, or some combination of both. We, therefore, are not willing to state as a matter of law the trial court erred by not ordering specific performance of the I-864 obligation.

{¶ 16} We next address the issue of whether the award of spousal support is sufficient to meet Mr. Motlagh's I-864 support obligation. In order to do so, we must determine the size of the household at issue, the amount of support required, and the amount, if any, of Ms. Motlagh's remaining income sources.

{¶ 17} We begin with household size and note that while the Act and related regulations set forth provisions for determining the household size when deciding whether the sponsor has the ability to support the sponsored immigrant (*see* 8 U.S.C. 1183a and 8 C.F.R. 213a.1), it does not explain how to calculate the size of the household when the parties divorce and no longer live together. *Erler v. Erler*, 824 F.3d 1173, 1177 (9th Cir. 2016). Ms. Motlagh contends that her household consists of one person, namely her. In support, she cites *Erler* for the proposition that "in the event of a separation, the sponsor's duty of support must be based upon a household that is equivalent to the number of sponsored immigrants living in the household, not on the total number of people living in the household." *Id.* at 1178. The *Erler* court was faced with a different situation in that the sponsored immigrant moved into a home with her adult son from another marriage. *Id.* at 1175. It did not address the situation present in this case, in which the sponsored immigrant, Ms. Motlagh, lives in a household that includes the couples' minor child of whom she was awarded sole custody but for whom Mr. Motlagh

is financially responsible. However, regardless of the relationship of the sponsored immigrant and others living in her household, we agree that the I-864 Affidavit "does not mandate the sponsor support other non-immigrant members of the household at 125 percent of the Federal poverty line." *Toure-Davis v. Davis*, D.Md. No. WGC-13-916, 2015 WL 993575, *3 (Mar. 4, 2015). Instead, "[t]he contractual obligation which [Ms. Motlagh] (the sponsored immigrant) may enforce against the sponsor [Mr. Motlagh] concerns the support [Mr. Motlagh] is required to provide [Ms. Motlagh] in accordance with Form I-864, Affidavit of Support." *Id.* Thus, we agree that the relevant household size consists of one person.

{¶ 18} The next consideration is the amount of support required by the Act. The 2017 federal poverty guidelines are a public record found at 82 Fed.Reg. 19. As set forth by the guideline, the federal poverty level for a household of one is $12,060. Thus, the minimum amount of support required under the I-864 Affidavit is $15,075.00.

{¶ 19} Finally, we address Ms. Motlagh's financial situation. We recognize that the I-864 requires a sponsor to have a sufficient amount of income to support an immigrant at 125 percent of the poverty line, and that 8 C.F.R. 213a.1 defines income as an individual's total adjusted income for purposes of federal tax liability. However, neither the Form nor the regulation purport to apply when calculating whether an immigrant has received "support" sufficient to maintain the immigrant at 125 percent of the federal poverty level. *See Erler v. Erler*, 824 F.3d 1173, 1177 (9th Cir. 2016). Thus, we must determine what support is available to Ms. Motlagh, and whether that support meets the minimum amount required.

{¶ 20} Unlike in the prior years analyzed by the trial court, there is no evidence that

Ms. Motlagh will receive any substantial monetary gifts from her brother. Further, the trial court noted that employment was not a likely prospect for at least two years, a finding that Mr. Motlagh did not appeal. Thus, the record demonstrates that for 2017 Ms. Motlagh's only apparent source of support is the spousal support ordered by the trial court.[2] The spousal support award provides a total of $10,800 per year, $4,275 less than the apparent minimum.

{¶ 21} We conclude that Mr. Motlagh, in order to satisfy his I-864 support obligation, must pay Ms. Motlagh a sufficient amount so that her income from all sources, including financial support she may receive from her brother, other family members, or anyone else, is at least 125% of the federal poverty line for a household of one person. We, thus, conclude that the trial court erred by not ordering Mr. Motlagh to pay Ms. Motlagh an amount of support that meets his I-864 support obligation. The trial court, upon remand, must insure that Ms. Motlagh's 2017 income from all sources is at least $15, 075.00. This can be accomplished, as discussed, through a spousal support order, an I-864 support order, or some combination of the two. Further, the trial court may consider whether in 2017 Ms. Motlagh has received financial support from any other source. Thereafter, the trial court, on a yearly basis or until Mr. Motlagh's I-864 obligation is statutorily terminated, may be called upon to enforce the I-864 support obligation.

{¶ 22} We note that Ms. Motlagh also claims that the trial court erred by implying that she has a duty to mitigate her damages. Specifically, she refers to the part of the trial court's decision which states, "[t]he two year timeframe during which [Ms. Motlagh]

---

[2] It appears that Mr. Motlagh believes his child support obligation should be counted toward Ms. Motlagh's support. We disagree. *See Younis v. Farooqi*, 597 F.Supp.2d 552 (D.Md. 2009); *Toure-Davis v. Davis*, D. Md. No. WGC-13-916, 2015 WL 993575.

would receive spousal support would permit her to procure the necessary skills to obtain employment and would allow her time to pursue her citizenship if she so desires." We do not read this passage as a requirement that Ms. Motlagh mitigate her damages with regard to the I-864. Instead, it appears to merely be part of the explanation as to why the trial court found spousal support appropriate under Ohio law for a period of only two years. To the extent that it can be read as a reference to mitigation of damages, we note that any discussion thereof is premature as the trial court has not ordered Ms. Motlagh to mitigate and has not ruled against her for failure to mitigate.

{¶ 23} Ms. Motlagh also complains that the trial court stated that it would retain concurrent jurisdiction with the federal courts over the I-864 obligation and that either party could raise the matter at a later date. We agree that state and federal courts have concurrent jurisdiction over enforcement of an I-864 support obligation. However, once the issue is litigated in a particular forum, a collateral attack in another forum is inappropriate. *See Davis v. U.S.*, 499 F.3d 590 (6th Cir. 2007). As to to the statement that both parties have standing to file future motions in the trial court with regard to the I-864, we find no error. While the "provision governing Affidavits of Support [omits] any language giving the sponsor an enforcement right or any other cause of action," *Davis* at 594, it does not purport to prevent a sponsor from filing to modify an I-864 support obligation when the facts give rise to such a filing.

{¶ 24} The first assignment of error is sustained in part and overruled in part.


## IV. Surety Bond

{¶ 25} The second assignment of error asserted by Ms. Motlagh is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING THE APPELLANT TO POST A SURETY BOND IN THE AMOUNT OF $100,000 WHICH THE COURT ORDERED IN THE FINAL JUDGMENT AND DECREE OF DIVORCE BY APPELLANT.

{¶ 26} Ms. Motlagh objects to the trial court's order that she post a surety bond in order to ensure that she does not leave the country with the parties' minor child. She argues that the cost of the bond will be unduly burdensome. She further argues that the evidence does not support the bond requirement.

{¶ 27} A review of the record demonstrates that Ms. Motlagh has no family, other than the parties' child, residing in the United States. It further contains evidence sufficient to demonstrate that, at least for a period of time during the pendency of the divorce action, she actively pursued a move to Australia, where her brother and sister reside. Finally, the psychologist appointed to conduct a custodial evaluation opined that the trial court should "impose its strongest stipulation to safeguard against [Ms. Motlagh] relocating abroad and abridging Mr. Motlagh's parental rights by denying or restricting his access to [the child]."

{¶ 28} Trial courts are entitled to broad discretion in custody proceedings. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraph two of the syllabus. Because "custody issues are some of the most difficult and agonizing decisions a trial judge must make," the judge must be given "wide latitude in considering all the evidence" and the decision must not be reversed absent an abuse of discretion. *Id.* at 418. The term abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140

(1983).

{¶ 29} Based upon the evidence in this record, we cannot say that the trial court abused its discretion by ordering the surety bond.   Further, while Ms. Motlagh contends that payment of the bond premiumus will be an undue hardship due to her limited income, there is nothing in this record upon which we can base such a finding.

{¶ 30} The second assignment of error is overruled.

## V. Attorney Fees

{¶ 31} Ms. Motlagh's third assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD APPELLANT ATTORNEY FEES PURSUANT TO R.C. 3105.73 IN ADDITION TO 8 U.S.C. SECTION 1183a(c) FOR ENFORCEMENT OF THE I-864 AFFIDAVIT OF SUPPORT.

{¶ 32} Ms. Motlagh argues that the trial court erred in failing to award her attorney fees.   She sought more than $76,000 in fees, and claimed entitlement thereto under both Ohio law and 8 U.S.C. 1183a(c).

{¶ 33} As previously stated, enforcement of the I-864 obligation may be intertwined with the issue of spousal support when the I-864 is raised in a divorce action, but they remain separate and distinct issues.   However, both actions, state divorce law and I-864 enforcement, provide for an award of fees.

{¶ 34} Pursuant to R.C. 3105.73(A), in a divorce action, a trial court may award "all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may

consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." In Ohio, "[t]he decision to award attorney's fees rests in the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." *Gore v. Gore*, 2d Dist. Greene No. 09–CA–64, 2010–Ohio–3906, ¶ 34. In this case the court specifically stated that after reviewing the demeanor of the witnesses and assessing their credibility, as well as considering the factors set forth in R.C. 3105.73, it concluded an award of attorney fees would be inappropriate. To the extent that this decision relates to fees expended solely in the pursuit of a divorce under Ohio law, we find no abuse of discretion.

{¶ 35} 8 U.S.C. 1183a(c) similarly provides that "[r]emedies available to enforce an affidavit of support under this section include * * * payment of legal fees and other costs of collection * * *." The trial court's decision and final judgment in this case are devoid of any indication of whether the trial court even considered an award of fees under 8 U.S.C. 1183a(c). The issue raised by the I-864 is similar to, but separate from, the issues raised by Ohio divorce law. Thus, we conclude that it was error for the trial court to fail to address fees as related to that statute.[3]

{¶ 36} Accordingly, the third assignment of error is sustained in part and overruled in part.

## VI. Conclusion

{¶ 37} Ms. Motlagh's first assignment of error being sustained in part and overruled

---

[3] We make no determination as to whether an award of fees, or a particular amount of fees, is appropriate in this case under the terms of the federal law. We merely find that it was error to fail to consider the claim therefor.

in part; the second assignment of error being overruled; and the third assignment of error being sustained in part and overruled in part, the issue of the amount of support as well as the issue of fees due, if any, under 8 U.S.C. 1183a(c) are remanded to the trial court for further proceedings.   The judgment of the trial court is affirmed in all other respects.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Robert L. Mues
Thomas G. Kopacz
Dalma C. Grandjean
Hon. Timothy D. Wood