# Illinois Official Reports

## Appellate Court

---

**In re Marriage of Bychina, 2021 IL App (2d) 200303**

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF ELENA BYCHINA, Petitioner-Appellant, and BORIS ASTRAKHANTSEV, Respondent-Appellee. |
| District & No. | Second District<br>No. 2-20-0303 |
| Filed | June 18, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 19-D-48; the Hon. Michael W. Reidy, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Julia Bikbova, of Northbrook, for appellant.<br><br>No brief filed for appellee. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices Schostok and Brennan concurred in the judgment and opinion. |

¶ 1 Petitioner, Elena Bychina, petitioned to dissolve her marriage to respondent, Boris Astrakhantsev, and included in her petition a count for breach of a federal contract under which respondent had promised to support petitioner, who is a recent immigrant to this country. The trial court acknowledged that it could reach the merits of the contract count but declined to do so and directed petitioner to seek relief in federal court. Petitioner appeals. We reverse and remand.

¶ 2 ## I. BACKGROUND

¶ 3 ### A. Marriage and Affidavit of Support

¶ 4 Petitioner, age 32, and respondent, age 55, met in August 2012 in Russia and began a relationship. Shortly thereafter, respondent, a United States citizen, returned to the United States, and the couple continued their relationship by phone and online. In 2013, respondent returned to Russia to see petitioner. He proposed marriage during a trip to Thailand. On December 29, 2014, petitioner entered the United States on a K-1 visa, otherwise known as a fiancée visa.

¶ 5 The parties married in Florida on March 9, 2015. Shortly after the marriage, on June 8, 2015, respondent executed a Department of Homeland Security United States Citizenship and Immigration Services Form I-864 (Affidavit of Support) under section 213A of the Immigration and Nationality Act, as amended and codified under title 8, chapter 12, of the United States Code. See 8 U.S.C. §§ 1182(a)(4), 1183a (2018). As petitioner's sponsor, respondent promised to support petitioner, the beneficiary, at an income level of at least 125% of the federal poverty level[1] and to reimburse any government agencies for certain means-tested benefits paid to petitioner. *Id.* § 1183a(a)(1)(A)-(C).

¶ 6 By way of background, the Affidavit of Support's purpose is to preclude admission to the United States of any alien who "is likely at any time to become a public charge" (*id.* § 1182(a)(4)(A)), and it constitutes a contract between the sponsor and the United States government for the benefit of, as relevant here, the sponsored immigrant (8 C.F.R. § 213a.2(d) (2020)). "The sponsored immigrant *** may seek enforcement of the sponsor's obligations through an appropriate civil action." *Id.*; see also 8 U.S.C. § 1183a(e) (2018) (with respect to financial support, sponsored alien may bring action to enforce Affidavit of Support against sponsor "in any appropriate court"). The sponsor's obligations end if he or she dies. 8 C.F.R. § 213a.2(e)(2)(ii) (2020). Further, the sponsor's obligations end if the sponsored immigrant (1) becomes a United States citizen, (2) has worked or can be credited with 40 quarters of coverage under the Social Security Act, (3) no longer has lawful permanent resident status and has left the United States, (4) becomes subject to removal but obtains a new grant of adjustment

---

[1]For reference, the Department of Health and Human Services' 2021 poverty guideline for the 48 contiguous states and the District of Columbia for a household of two persons is $17,420 in annual income and is $12,880 for a household of one person. Annual Update of the HHS Poverty Guidelines, 86 Fed. Reg. 7732, 7733 (Feb. 1, 2021). Multiplying the two-person-household figure by 125% yields $21,775, and the result for a one-person household is $16,100. A sponsor's support duty, one court has held, must be based on a household size equivalent to the number of sponsored immigrants living in the household. *Erler v. Erler*, 824 F.3d 1173, 1178 (9th Cir. 2016).

of status based on a new affidavit, or (5) dies. *Id.* § 213a.2(e)(2)(i). As relevant here, divorce, as the Affidavit of Support states, does *not* terminate the sponsor's obligations under the Form I-864. See, *e.g.*, *Younis v. Farooqi*, 597 F. Supp. 2d 552, 554 (D. Md. 2009); *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1024 (N.D. Cal. 2008).

¶ 7 In the signature section of the Affidavit of Support, respondent certified under penalty of perjury that he "agree[d] to submit to the personal jurisdiction of *any* Federal or *State court* that has subject matter jurisdiction of a lawsuit against [him] to enforce [his] obligation under this Form I-864." (Emphases added.).

¶ 8 ## B. Dissolution Proceedings

¶ 9 On January 8, 2019, petitioner petitioned for dissolution of the parties' marriage. In her petition, she included a count for breach of contract, alleging that respondent breached his promise to her (as a third-party beneficiary) under the Affidavit of Support, where he canceled her medical insurance (in January 2018) and had failed to financially support her (since late December 2018). Petitioner asserted that she was a full-time student at the College of Du Page, was not employed, and did not expect to gain full-time employment at any point in the near term. Respondent worked as an independent-contractor truck driver for an interstate transportation company. Petitioner asserted that she would not be able to become a United States citizen until late 2022 or later (and only if she gained the requisite knowledge and command of the English language). (By instituting the divorce action, she was giving up her ability to become a citizen in three years and would instead have to wait five years.) As a lawful permanent resident of the country, she asserted, she was prohibited from seeking and obtaining any public benefits. Thus, respondent, under the Affidavit of Support, was required to support her until she became a citizen. Petitioner sought enforcement of the Affidavit of Support, attorney fees, and costs.

¶ 10 Respondent answered the petition, raised the affirmative defense of fraud, and counterpetitioned for a declaration of the invalidity of the marriage, arguing that he was fraudulently induced into the marriage, because petitioner merely sought United States citizenship. According to respondent, petitioner never intended to live as husband and wife with him, have children, or remain married past the acquisition of her permanent-resident status.

¶ 11 Petitioner moved for temporary maintenance, and the trial court granted the motion on February 21, 2019. The trial court subsequently found respondent in contempt for failing to pay rent on a temporary basis, temporary maintenance, and interim fees. Respondent posted bonds that were turned over to petitioner. In a subsequent filing, petitioner alleged that she was employed as an Uber driver and was a student at the College of Du Page.

¶ 12 ## C. Trial and the Court's Order

¶ 13 Trial occurred on March 13, 2020. Respondent's attorney appeared, but respondent did not appear or present evidence. Petitioner was the only witness to testify, and the record on appeal does not contain a report of proceedings from the trial.

¶ 14 On May 8, 2020, the trial court dissolved the parties' marriage but declined petitioner's request to enter judgment on the breach-of-contract count and directed her to seek that relief in federal court. In extensive written findings, the court noted that the parties' marriage was of

short duration, there were no children and virtually no assets, and there was modest debt; the central issues were maintenance and the Affidavit of Support.

¶ 15 As relevant here, on the dissolution count, the court determined that an award of maintenance for petitioner was not justified under the current circumstances. The court would review maintenance for her in 18 months (and set the end date at three years for petitioner to file a maintenance claim), wherein it would assess any steps petitioner took to become self-supporting. It barred respondent from seeking maintenance and rejected respondent's fraud affirmative defense and his request to find that the marriage was invalid.

¶ 16 The parties' income was unclear, the court determined, as both parties were incredible on the subject. Petitioner, the court found, was underemployed and did not testify how many hours she worked per week or month. She had a university degree from Russia and was hardworking and intelligent. Although English is her second language, the court noted, she had a greater understanding of it than she portrayed in court (as evidenced in part by her responding in English to a question in court before it was fully translated into Russian).

¶ 17 The court related that petitioner had testified that she underwent a medical procedure that resulted in her being unable to conceive a child.[2] When she informed respondent, he advised her that he no longer wished to be in a relationship with her. During the pendency of the proceedings, respondent had been ordered to pay monthly rent for the parties' apartment, but he did not comply with the order and was found in indirect civil contempt of court. The court also found him incredible on the issue of his income but did not find him in contempt, because he was "purportedly no longer working and had medical issues." In subsequent proceedings, the court noted, respondent had not paid his temporary-maintenance arrearage or interim attorney fees and was found in indirect civil contempt (for failing to pay $8450). It issued a body writ when respondent failed to make any payments toward the purge and failed to appear in court. The true nature of respondent's medical condition, the court found, was unknown. He worked as a truck driver, warehouse worker, and then "possibly a baby-sitter." Respondent's income and the sources thereof were unknown.

¶ 18 As to petitioner, the court determined that she had the ability to work more hours than she did and that, when she has needed more income, she has worked more hours and earned more. She drove for Lyft and Uber. Despite not receiving maintenance payments from respondent, she did not see her needs increase. "[W]hen she had a need, she was able to meet that by working more hours." She "is either under-reporting her income or is, otherwise, underemployed." The court found that petitioner had the ability to earn over $2000 per month, where she had done so on two occasions in the prior year. The 18-month review date for maintenance, the court noted, was to assess what additional efforts petitioner made to become self-supporting and to review efforts she made concerning her federal case, if she had brought one.

---

[2]According to the trial court, petitioner returned to Russia in 2018 to undergo a procedure for a "serious health problem." As a result, petitioner told respondent in the fall of 2018 that she would be unable to conceive. On December 31, 2018, respondent informed her that he was not going to live with her anymore and that he was leaving to go to another state to live and did not want a future with her. Respondent also stated that he did not want to file for divorce but that petitioner could do so if she wanted. The trial court found that respondent "essentially abandoned" petitioner in 2019.

¶ 19    Turning to the breach-of-contract count, the trial court noted that petitioner had requested a finding that respondent breached his obligations under the Affidavit of Support, wherein he promised to support petitioner at an income level at least 125% of the federally determined poverty level. The trial court found that petitioner's case law was not relevant to this case, where one case did not involve a Form I-864 (*In re Marriage of Spircoff*, 2011 IL App (1st) 103189) and another case, an unpublished decision, did not apply to petitioner's situation (*In re Marriage of Amin*, 2011 IL App (2d) 100431-U, ¶¶ 14, 32 (finding that, contrary to the respondent's assertion, trial court had considered Affidavit of Support in its determination of maintenance and set maintenance above the amount that would have been awarded under the affidavit)).

¶ 20    Here, the trial court noted that petitioner had argued that the court had jurisdiction to decide the contract count, because she was a third-party beneficiary of the Affidavit of Support. However, the court stated that the issue before it was not whether the court "could" decide the issue but whether it "should" do so—specifically, whether the trial court or federal court was the more appropriate court to decide the issue. Citing *Wenfang Liu v. Mund*, 686 F.3d 418, 421-23 (7th Cir. 2012) (holding that a sponsored immigrant has no duty to mitigate damages in a suit seeking to enforce an Affidavit of Support), the court determined that, for several reasons, petitioner's suit to enforce the Affidavit of Support "arises under Federal law."

¶ 21    First, the trial court determined that federal court was "the appropriate court" to hear the case

> "in light of the inherently conflicting nature of the Affidavit of Support obligations and Illinois statutory and case law. For instance, in Illinois, the Court can find that a party is underemployed and impute income to that party. Moreover, an Illinois court can impose upon a party an obligation to take advantage of a job opportunity. Additionally, in Illinois, a court can look at a party's efforts at becoming self-supporting. This is in direct contravention of the federal law which prohibits courts from requiring sponsored immigrants to mitigate their circumstances."

¶ 22    Second, the court found that providing the federally required level of support "is not necessary if the immigrant can obtain employment at a wage equal to or above the specified level." The court characterized petitioner's financial situation as "implausible," given that she had been living without any support from respondent for nearly one year. Her work hours were unknown, and, the court further noted, petitioner testified that she worked six hours but without further clarification (*i.e.*, whether daily, weekly, or monthly). Petitioner also did not testify as to any impairment to working more than the 15 hours per week she spent studying and taking English classes. The court determined that petitioner could work more hours. Given her testimony that, on two occasions, she earned over $2000 in a month (earning $2700 on one occasion), the court found that petitioner could earn between $24,000 and $32,400 per year in gross income, which is above the federal poverty guidelines. The court further found that petitioner was a "very capable, resourceful, hard-working (when she wants to be), young woman." She has a college degree, is proficient in two languages, and demonstrated continued improvement in her English proficiency. She had obtained a driver's license, helped run respondent's business (she "was extremely knowledgeable about the finances, revenue[,] and expenses of" respondent's company), and worked part-time for Uber and Lyft. The court characterized her as the type of immigrant who "can obtain employment at a wage equal to or above the specified federal poverty guideline level."

- 5 -

¶ 23 Third, the court noted that it did not wish to "inhibit" petitioner from seeking relief in federal court. The court again noted the conflicting considerations in federal and Illinois law and the fact that the court did not want the doctrines of *res judicata* or collateral estoppel to bar a cause of action in federal court, "especially since this Court can impute income to [petitioner] at an amount above the federal poverty guidelines and make a finding that [she] is capable of obtaining employment at a wage equal to or above the specified level." Also, the court noted that, based on petitioner's gross income and court-ordered temporary maintenance payments and judgments, it could find that respondent had *not* breached his obligations under the Affidavit of Support to maintain petitioner at 125% of the poverty guidelines. The trial court noted that it had considered the Affidavit of Support and found that "it is likely that [petitioner's] relief will be granted in federal court. The Court has also reserved the issue of maintenance to allow [petitioner] to file her case in federal court and see if she is successful and, if not, this Court [retains] jurisdiction to redress any shortcoming." Accordingly, it found that, because the Affidavit of Support "arises under Federal law, the Federal District Court is the appropriate Court in which to bring suit."

¶ 24 Turning to respondent's fraud count, the court rejected the claim, finding that respondent presented no evidence of any fraud and did not appear for trial. On the contrary, the court found that the marriage was "one born out of love, commitment[,] and mutual[ ] informed consent." It was not until petitioner's medical procedure that respondent wanted out of the marriage.

¶ 25 Petitioner appeals.

## II. ANALYSIS

¶ 26

¶ 27 Petitioner's sole issue on appeal is that the trial court erred in refusing to address the merits of her breach-of-contract count. She asserts that, as a court of general jurisdiction, the court had no discretion to decline review of her action to enforce the Affidavit of Support. Petitioner requests that we reverse or vacate in part the court's order and remand with directions to review the merits of her claim. For the following reasons, we conclude that the court erred in refusing to address the merits of petitioner's contract claim.

¶ 28 Preliminarily, we note that respondent has not filed an appellee's brief. Because the record is simple and the claimed errors are such that we can easily decide them without the aid of an appellee's brief, we address the merits of the appeal. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 29 Whether a court has discretion to review a particular claim presents a question of law. We review *de novo* legal questions. *Salgado v. Marquez*, 356 Ill. App. 3d 1072, 1075 (2005). To the extent that the central issue here can be characterized as a question of the proper forum, it is reviewed for an abuse of discretion. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 106 (1990). A court abuses its discretion where no reasonable person would adopt the court's view. *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 571 (2001). We note that, regardless of the standard of review, our holding is the same.

¶ 30 Petitioner argues that, as a court of general jurisdiction, the trial court *must* review a common-law breach-of-contract action brought by a third-party beneficiary to the contract, specifically an immigrant spouse's action to enforce an affidavit of support as part of a dissolution proceeding. She contends that, although her right under the Affidavit of Support is created by federal law, the enforcement of the contract is a matter of state common law, whether as a legal breach-of-contract claim or an equitable claim for specific performance.

¶ 31    Addressing the trial court's comments concerning the conflicts between Illinois divorce law and federal law, petitioner argues that this did not constitute a valid reason for refusing to address her claim to enforce the Affidavit of Support. She also contends that she was deprived of her choice of venue, based on the trial court's erroneous determination that, if it reviewed her claim, then petitioner would be precluded from seeking relief in federal court. Petitioner argues that the court's concerns were irrelevant, as petitioner herself asked the court to rule on the matter, and that any mitigation concerns are irrelevant to assessing an Affidavit of Support. Finally, petitioner argues that it is unreasonable and burdensome for her to file and prosecute a separate action in federal court to enforce the breached contractual obligation under the Affidavit of Support. She contends that immigrant spouses have few resources to maintain both a state dissolution action and a federal claim to enforce an affidavit of support. Here, petitioner asserts, the parties conducted extensive discovery to establish petitioner's earned income after the parties separated and during the period when respondent was no longer providing her any support. Petitioner also notes that she paid the filing fees and costs to file her petition in state court and a modest retainer to her counsel to initiate the proceedings. (In her brief, counsel asserts that, in this appeal, she represents petitioner *pro bono*.) Requiring her and other similar immigrant spouses to maintain separate actions will cause an undue burden on "such litigants who are already in poverty and without means of support, while also causing an inefficient use of judicial resources." Petitioner asserts that it would also cause an unreasonable delay in the sponsored immigrant's ability to begin receiving support. A federal court, she posits, would either have to make a decision based on an unknown—how well petitioner would be supported after a dissolution, which is based on whether the state trial court awards maintenance, which, in turn, reduces respondent's obligation—or, as the more likely outcome, wait until after the state trial court's final decision, thereby causing unnecessary delay and costs.

¶ 32    Again, the Affidavit of Support "is legally enforceable against the sponsor by the sponsored alien." 8 U.S.C. § 1183a(a)(1)(B) (2018); see also 8 C.F.R. § 213a.2(d) (2020). The sponsor's obligation under the affidavit does not terminate in the event of divorce. See, *e.g.*, *Younis*, 597 F. Supp. 2d at 554; *Shumye*, 555 F. Supp. 2d at 1024. By signing the Affidavit of Support, the "sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(a)(1)(A) (2018). The terms of the affidavit provide for the appropriate " 'measure of damages that would put [the sponsored immigrant] in as good a position as [he or] she would have been had the contract been performed.' " *Shumye*, 555 F. Supp. 2d at 1024. To determine the appropriate damages, courts compare the sponsored immigrant's annual income for the particular years at issue, rather than the aggregate income for the entire period, against the 125% poverty threshold for each particular year. *Id.* at 1024-25. A sponsor may also be held liable for attorney fees, other costs of collection, and "corresponding remedies available under State law." See 8 U.S.C. § 1183a(c) (2018).

¶ 33    The "right of support conferred by federal law exists apart from whatever rights [a sponsored alien] might or might not have under [state] divorce law." *Wenfang Liu*, 686 F.3d at 419-20. A sponsor is required to pay only the difference between the sponsored immigrant's income and the 125% of poverty threshold; there is no requirement to pay spousal support when the sponsored immigrant's income exceeds the poverty threshold for a household. See *Barnett v. Barnett*, 238 P.3d 594, 598-99, 598 n.13 (Alaska 2010).

¶ 34 The bases the trial court stated for its finding that federal court was the appropriate court for the breach-of-contract claim were that (1) Illinois divorce law conflicts with Affidavit of Support obligations under federal law, (2) petitioner's financial situation was "implausible" and she could earn more than the federal poverty guideline, and (3) it did not wish the doctrines of *res judicata* or collateral estoppel to preclude petitioner from obtaining relief in federal court, where she was, in the trial court's view, likely to obtain relief; further, the court had reserved maintenance so that petitioner could seek relief in federal court and, if she were unsuccessful, the court retained "jurisdiction to redress any shortcoming."

¶ 35 State courts have jurisdiction to hear claims seeking to enforce Form I-864 obligations. See, *e.g.*, *In re Marriage of Kumar*, 220 Cal. Rptr. 3d 863, 868 (Ct. App. 2017) (holding that immigrant wife had standing to enforce in state court support obligation under Form I-864 as a binding contract; "state courts regularly exercise jurisdiction over contract claims involving I-864 affidavits brought by the sponsored immigrant"; citing cases for same); *Motlagh v. Motlagh*, 2017-Ohio-8667, 100 N.E.3d 937, ¶ 9 (App. 2 Dist.) ("[c]ourts have typically interpreted the statute[, *i.e.*, 8 U.S.C. 1183a(e),] as permitting a sponsored immigrant to seek enforcement of the affidavit in divorce actions"; citing cases for same).

¶ 36 Here, the trial court, without any motion or responsive pleading, *sua sponte* declined to rule on petitioner's contract claim. Petitioner argues that the trial court had no discretion to decline to rule on her claim seeking enforcement of the Affidavit of Support. While courts may, in limited circumstances, decline to address otherwise valid claims, the circumstances here do not support the trial court's refusal to do so. See, *e.g.*, *Crissman v. Strickland*, 43 Ill. App. 3d 496, 498 (1976) (discussing inherent power of court to *sua sponte* dismiss claims pursuant to *de minimis* rule); *McGann v. Illinois Hospital Ass'n*, 172 Ill. App. 3d 560, 565 (1988) (citing *Patterson v. Northern Trust Co.*, 286 Ill. 564 (1919) (court has inherent authority to protect itself from vexatious litigation)).

¶ 37 The court partly based its determination on the fact that Illinois divorce law conflicts with the obligations under Form I-864. This was error. Respondent's obligations under the Affidavit of Support are separate from any obligations, such as maintenance, he may have under Illinois divorce law. See *Motlagh*, 2017-Ohio-8667, ¶ 13 (noting that a spousal support award under Ohio divorce law is an equitable remedy and that the Form "I-864 obligation involves a federally granted contractual remedy that is independent of spousal support and survives divorce"). Where a spousal support award is insufficient to maintain the sponsored immigrant's income at the federally specified minimum level, the sponsor remains liable under the Affidavit of Support for the amount necessary to reach the minimum level. *Id.* ¶ 14. The Form I-864 obligation may be enforced in a state divorce action, it has been noted, through specific performance of the contract, by an order for spousal support under state law, or by a combination of both.[3] *Id.* ¶ 13. Here, the trial court was entirely capable of fashioning a remedy under both counts of petitioner's petition, and it erred in declining to address the merits of the contract claim.

¶ 38 The trial court erred in determining that federal court was preferable because the trial court had not decided the maintenance issue, it required more time to assess the issue, and it wished to allow petitioner time to seek relief in federal court on her contract claim before returning to

[3]Petitioner was not obligated to file her case in federal court, and she could have filed her contract claim anywhere in the circuit court's civil division.

the trial court for the court's maintenance determination. It required petitioner, whose claim was properly before a court that *could* decide the issue and which she had *asked* to decide it, to incur additional costs and delays in filing a new action in another court. There is no argument to be made that the federal court can *better* assess a claim for breach of an obligation under Form I-864. A state court is as capable as a federal court of addressing the contact issue raised by such a claim, as was evidently recognized by the courts in *Kumar* and *Motlagh*. Moreover, the circumstances here do not present a scenario that warrants declining petitioner's request to hear her claim. If the trial court believed that it could better determine maintenance if it were aware of the federal court's resolution of the contract claim, this was erroneous, because the trial court *itself* could have resolved the contract claim before it turned to assess maintenance. *Motlagh*, 2017-Ohio-8667, ¶ 13; see also Greg McLawsen, *The I-864 Affidavit of Support: An Intro to the Immigration Form You Must Learn to Love/Hate*, 48 Fam. L.Q. 581, 590 & n.58 (2015) (querying why Form I-864 claims "are litigated mostly in federal court" and noting choice is "somewhat puzzling" and could be based on "mistaken view that [Form] I-864 enforcement involves 'federal law.' The better understanding is that enforcement is a suit on a contract, precisely the type of dispute that a state court of general jurisdiction is competent to adjudicate").

¶ 39 Finally, we disagree with the trial court's concerns that any findings it made concerning the contract claim would preclude relief in federal court on the basis of collateral estoppel or *res judicata*. See *Davis v. United States*, 499 F.3d 590, 595 (6th Cir. 2007) (remedy available from state court's allegedly erroneous "construction of the Affidavit of Support is an appeal within the state court system and ultimately to the United States Supreme Court, not a collateral attack in the lower federal courts"); see also McLawsen, *supra*, at 590-91 (noting that issue preclusion/collateral estoppel could preclude a subsequent federal claim where Form I-864 was adjudicated in a dissolution action, but also noting that claim preclusion/*res judicata* could bar subsequent Form I-864 claim where such claim should have been raised in family law court, although decisions are mixed). Petitioner *herself* chose the trial court as the venue she desired to rule on her contract claim, and the claim, as the trial court acknowledged, was properly before it. The court did not identify any remedies that it believed were uniquely available to petitioner in federal court, and we cannot contemplate any in the context of an action to enforce an obligation under the Affidavit of Support. Under these circumstances, the court erred in declining to rule on the merits of her claim.

¶ 40 In summary, because the trial court's bases for declining to rule on the merits of petitioner's breach-of-contract claim were not valid under the circumstances of this case, we reverse and remand for the court to consider petitioner's claim.

¶ 41                               III. CONCLUSION

¶ 42 For the reasons stated, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

¶ 43 Reversed and remanded.